*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE HUMAN TISSUE PRODUCTS LIABILITY LITIGATION** | Civ. No. 06-135<br>MDL No. 1763 |
| **THIS DOCUMENT RELATES TO:**<br><br>**CYNDIA KENNEDY-MCINNIS, LEJUNE KENNEDY, CAROLYN KENNEDY-GREEN, ERNEST KENNEDY, BRANT KENNEDY, DONNA MATTERN, ROBERT NENNO, LAURIE STATHOPOULOS, JILL WIRTH, VIRGINIA JACOBSON, ROLANN BAILEY, SHAUNA CLAY and JOHN YEAGER on behalf of themselves and all persons similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**BIOMEDICAL TISSUE SERVICES, LTD., MICHAEL MASTROMARINO, SERENITY HILL'S FUNERAL HOME, INC., THOMAS E. BURGER FUNERAL HOME, INC., PROFETTA FUNERAL HOME, REGENERATION TECHNOLOGIES, INC., LIFECELL CORP., TUTOGEN MEDICAL, INC., BLOOD & TISSUE CENTER OF CENTRAL TX, and LOST MOUNTAIN TISSUE BANK,**<br><br>Defendants. | Civ. No. 06-5140<br><br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

**MARTINI, U.S.D.J.**

This is a putative class action brought by the relatives of decedents who claim that

the defendants harvested and processed bones and tissue from their relatives' bodies without proper consent.[1]  Presently before the Court are motions for summary judgment filed by defendants Tutogen Medical, Inc. ("Tutogen") and Blood & Tissue Center of Central Texas ("BTCCT").  The plaintiffs oppose the motions and have filed their own cross-motion for summary judgment.  For the following reasons, the motions for summary judgment filed by Tutogen and BTCCT are **GRANTED**, and the plaintiffs' Amended Complaint against Tutogen and BTCCT is **DISMISSED** without prejudice.

## BACKGROUND & PROCEDURAL HISTORY

The named representative plaintiffs in this class action are relatives of the following decedents: Lottie Ann Warren-Kennedy, Jean Guerinot, Ruth Passarella, Raymond Jacobson, Philip W. Bailey, and Albert Yeager.  According to the named representative plaintiffs, each of the decedents' bodies went to one of three funeral homes located in New York: Serenity Hill's Funeral Home, Inc., Thomas E. Burger Funeral Home, Inc., and Profetta Funeral Home.  The plaintiffs claim that the funeral homes, after taking possession of the bodies, allowed Biomedical Tissue Services, Inc. ("BTS") to harvest (*i.e.*, remove) bones and tissue from the decedents for medical research and implantation.  The plaintiffs allege that neither they nor the decedents consented to the harvesting of the body parts.  Furthermore, the plaintiffs claim that the funeral homes never disclosed that such harvesting would occur.

---

[1] Criminal proceedings against certain of the defendants related to the alleged illegal harvesting of body parts are currently pending in state courts.

The plaintiffs allege that the defendants' actions caused them severe emotional harm. Thus, they instituted this action on March 7, 2006 by filing a class action complaint in the Western District of New York. The purported class consists of "all next of kin relatives of decedents whose bodies were desecrated by BTS for the harvesting and sale of human body parts." (Am. Compl. ¶ 31.) The Judicial Panel on Multidistrict Litigation transferred the action to this Court for consolidation with *In re Human Tissue Products Liability Litigation*, MDL No. 1763. Then, on December 6, 2006, United States Magistrate Judge Ronald J. Hedges ordered the defendants in this action to answer or otherwise move in response to the plaintiffs' Amended Complaint.

In January 2007, defendants BTCCT, LifeCell Corp. ("LifeCell"), Tutogen, Regeneration Technologies, Inc. ("RTI"), and Lost Mountain Tissue Bank ("Lost Mountain") (collectively, the "Tissue Bank Defendants") filed separate motions for summary judgment pursuant to Fed. R. Civ. P. 56. Each of these defendants is a tissue bank that allegedly received tissue and body parts from BTS. The plaintiffs contend that the Tissue Bank Defendants "failed to properly screen the body parts for proper authorizations, and upon information and belief, had knowledge that the body parts could have been obtained without consent." (Am. Compl. ¶ 34.)

The plaintiffs' Amended Complaint, while containing six counts, only names the Tissue Bank Defendants in two of the counts. In Count Two, the plaintiffs claim that the Tissue Bank Defendants caused them great emotional pain and suffering by mishandling

3

and desecrating their relatives' bodies. (Am. Compl. ¶¶ 98-101.) In Count Six, the plaintiffs assert that the Tissue Bank Defendants were negligent in failing to ensure that BTS obtained proper consents to harvest their relatives' body parts. (Am. Compl. ¶¶ 112-118.) The remaining counts of the Amended Complaint pertain to the other non-moving defendants.

Each of the Tissue Bank Defendants has moved for summary judgment on Counts Two and Six by relying primarily on the New York Anatomical Gift Act, N.Y. Pub. Health Law §§ 4300-4309. In addition, Tutogen and BTCCT argue that they never received bones or tissue from any of the named decedents, and therefore, the relatives of those decedents lack standing to sue. The plaintiffs oppose the motions and have cross-moved for summary judgment against the Tissue Bank Defendants, Thomas E. Burger Funeral Home, Inc., Profetta Funeral Home, and Serenity Hill's Funeral Home. In addition, the plaintiffs have moved for default judgment against defendants BTS and its Chief Executive Officer, Michael Mastromarino. In this Opinion, the Court narrowly addresses the summary judgment motions filed by Tutogen and BTCCT.[2]

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2] The other pending motions are addressed in a separate Opinion of this Court.

judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of showing that no genuine issue of material fact exists rests initially on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A litigant may discharge this burden by exposing "the absence of evidence to support the nonmoving party's case." *Id*. at 325. In evaluating a summary judgment motion, a court must view all evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976).

Once the moving party has made a properly supported motion for summary judgment, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A party cannot simply rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion. Fed. R. Civ. P. 56 (providing that the party opposing summary judgment may not rest upon the mere allegations or denials of the pleading but, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial).

If the non-moving party fails to support its opposition by affidavits, depositions, answers to interrogatories, admissions on file, and pleadings, a court may nevertheless deny or stay summary judgment if "it appear[s] from the affidavits of a party opposing the

motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f).  A party moving pursuant to Rule 56(f), however, must submit an affidavit explaining "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."  *Doe v. Abington Friends School*, 480 F.3d 252, 256 (3d Cir. 2007) (citations omitted).  For purposes of Rule 56(f), a mere legal memorandum is insufficient, and failure to comply with Rule 56(f) in all but the most exceptional cases is "fatal to a claim of insufficient discovery on appeal."  *Bradley v. United States*, 299 F.3d 197, 207 (3d Cir. 2002); *see also Radich v. Goode*, 886 F.2d 1391, 1394 (3d Cir. 1989).

## **DISCUSSION**

In their respective motions for summary judgment, BTCCT and Tutogen argue that the named representative plaintiffs lack standing to assert any claims against them.[3]  After a search of their records, BTCCT and Tutogen assert by way of an affidavit that they never received any bones or tissue from the deceased relatives of the named representative plaintiffs in this case.  They contend, therefore, that no named representative plaintiff can establish a causal connection between BTCCT and Tutogen's actions and any injury suffered.  (Unger Aff. ¶ 2; Pering Aff. ¶¶ 3-4.)  Thus, the plaintiffs lack standing to sue.  *Id.*  The Court agrees.

---

[3] The Court need not address Tutogen and BTCCT's other defenses as they are discussed in the Court's related Opinion addressing the summary judgment motions of defendants LifeCell, RTI, and Lost Mountain.

To establish standing, the plaintiff bears the burden of demonstrating, among others, "a causal connection between the injury and the conduct complained of." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *United States v. Hayes*, 515 U.S. 737, 742-43 (1995); *Danvers Motor Corp. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003). In cases involving class actions, if "none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Therefore, class action claims against Tutogen and BTCCT cannot survive if the named representative plaintiffs fail to establish standing.

In this case, the named representative plaintiffs have not established that Tutogen and BTCCT caused their alleged injuries. In the Amended Complaint, the plaintiffs allege that defendants caused them emotional distress by "intentionally harvesting decedents' body parts without the prior consent of decedent or the consent of decedent's next of kin" and "failing to ensure the authenticity of the consents provided as well as failing to ensure that consents were obtained for the harvesting of their relatives' bodies." (Am. Compl. ¶¶ 99-101, 115-18.) By filing affidavits disclaiming any involvement in the harvesting or processing of the body parts of the named representative plaintiffs' relatives, Tutogen and BTCCT have appropriately shifted the burden back to the plaintiffs

7

to establish some link between their conduct and the alleged harm to the plaintiffs.

In response, the plaintiffs have neither provided any evidence of Tutogen or BTCCT's involvement nor challenged the accuracy or truthfulness of Tutogen and BTCCT's affidavits.  Also, the plaintiffs do not challenge the use of the donor forms, regardless of whether or not they were "signed," as reliable evidence of which tissue banks received or processed decedents' tissue.  Rather, the plaintiffs speculate that Tutogen and BTCCT would likely have received "incomplete and unsigned donor forms from countless other families," who have not yet been identified, based upon their belief that the "illegal harvesting scandal spread across New York State, . . . reached into, at least, three states and involved numerous funeral homes and several tissue banks."  (Pls.' Br. 18.)  Thus, the plaintiffs argue that there could be standing based upon the class members' potential link to Tutogen and BTCCT.  In advancing this argument, the plaintiffs fail to appreciate that without named representative plaintiffs who establish standing, the class as a whole is without standing.  To support a claim against Tutogen and BTCCT, it is not enough to hope that a potential class representative has sufficient standing against Defendants.[4]  *See e.g.*, *United Presbyterian Church in the U.S.A. v.*

---

[4] In the plaintiffs' opposing submissions, counsel for the plaintiffs states that his firm has been retained by several additional clients related to seven additional decedents in this action.  (White Affirmation ¶ 83.)  BTCCT further submitted by way of affidavit that a search of their records revealed no receipt or processing of any tissue from these additional decedents.  (Unger Supplementary Aff.¶ 2.)  Tutogen submitted by way of affidavit that it received tissue from a Mark Kiefer, who may or may not be the same individual identified by the plaintiffs' counsel.  (Pering April 2, 2007 Aff.¶5.)   As the plaintiffs have not formally added these unnamed potential plaintiffs to represent their class action, Tutogen's potential link to a potential class member does not materially change the Court's analysis.

*Reagan*, 738 F.3d 1375, 1383 (D.C. Cir. 1984) (where a plaintiff "does not even on information and belief assert specific facts sufficient to confer standing, the district court may properly deny requests for discovery").

In further opposition to the defendants' summary judgment motions, the plaintiffs argue that summary judgment is premature under Rule 56(f), and that further discovery is needed to uncover whether there are any unnamed class members whose relatives' tissue were received or processed by Tutogen or BTCCT. (Pls.' Br. 18-19; Pls.' Rule 56 Statement ¶¶ 3-4.) The plaintiffs claim that there are "numerous other unnamed families who have engaged [their] firm as a result of illegal harvesting." (Pls.' Br. 18.) Plaintiffs' counsel affirms that they have been retained by potential plaintiffs of seven decedents. (White Affirmation ¶ 83.) Thus, plaintiffs' counsel urges this Court to deny or stay the motions of Tutogen and BTCCT so that they may have "an opportunity to obtain discovery relating to whether Defendants Tutogen and [BTCCT] also possess unsigned donor documents belonging to the countless members of this class action who have yet to be identified." (Pls.' Rule 56 Statement ¶¶ 3-4.)

The Court first notes that the plaintiffs have not submitted a proper motion pursuant to Rule 56(f). Although an affirmation by the plaintiffs' counsel and a "Rule 56 Statement" was submitted by the plaintiffs, the plaintiffs in this matter have not, by way of affidavit, recited "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." *Abington*

9

*Friends School*, 480 F.3d at 256 (citations omitted). Thus, their opposition is technically deficient.

The Court, however, is cognizant that discovery, except for the limited discovery related to the donor records of the named plaintiffs, was stayed in this case by order of the Court. The Court is further mindful that district courts "grant properly filed Rule 56(f) motions as a matter of course," and that the "summary judgment process presupposes the existence of an adequate record." *Id*. at 257. In the instant case, the plaintiffs have not properly filed a Rule 56(f) motion, and the Court must heed the "strong presumption against a finding of constructive compliance with Rule 56(f)." *Bradley*, 299 F.3d at 207.

Even if this Court were to overlook these defects, it would nevertheless grant summary judgment, as the named plaintiffs in this class action have not sufficiently established standing. Assuming that the Court grants discovery of yet unnamed decedents and further assuming that one of the relatives of a decedent is able to establish a causal link to Tutogen and BTCCT, the plaintiffs would still fail to establish standing as these relatives are not named representatives of the purported class. The plaintiffs' vague assertions that they will likely, at some future date, find some relative of a decedent, whose tissue was illegally harvested and then processed by Tutogen and BTCCT, cannot be sufficient to create an issue of material fact.

In effect, the plaintiffs are requesting that this Court allow a fishing expedition into the identity of all donors whose tissue Tutogen and BTCCT have received and processed.

10

With the information obtained during discovery, the plaintiffs seek potential class members to tie Tutogen and BTCCT into this litigation.  Undoubtedly, if these class members were found, the plaintiffs would then seek to elevate them as named representatives of the class by amending their complaint a third time, and thereby, preserving their claims against Tutogen and BTCCT.  This reverse engineering of standing cannot be a basis to stay or dismiss the summary judgment motions.

As the plaintiffs fail to raise any issue of material fact regarding the standing of the named representative plaintiffs, the Court will grant the summary judgment motions of Tutogen and BTCCT.   Accordingly, the plaintiffs' claims against BTCCT and Tutogen are dismissed without prejudice.

## CONCLUSION

For the reasons stated above, Tutogen and BTCCT's motions for summary judgment are **GRANTED**.  The plaintiffs' Amended Complaint against Tutogen and BTCCT is **DISMISSED** without prejudice.  An appropriate Order accompanies this Opinion.

s/William J. Martini
**William J. Martini, U.S.D.J.**

Dated: November 13, 2007